**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**COMMUNITY SHOPS, INC., Respondent.**

**No. 13507.**

United States Court of Appeals Seventh Circuit.

April 5, 1962.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Stuart Rothman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Melvin J. Welles and Eliott Moore, Attys., N. L. R. B., Washington, D. C., for petitioner.

Samuel Edes, Edes & Rosen, Claire I. Rosen, Chicago, Ill., for respondent.

Before HASTINGS, Chief Judge, and KNOCH and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

The National Labor Relations Board seeks enforcement of an order against Community Shops, Inc., based on a decision in which it found that Community violated Section 8(a) (3) and (1) of the National Labor Relations Act, as amend-

ed, 29 U.S.C.A. §§ 158(a) (3) and (1),[1] by adopting a rehire formula in 1959 which unlawfully discriminated against certain employees who had engaged in an economic strike during the previous year.

Community has engaged in the business of baking fruit cakes since 1942. Originally the fruit cake business was a side line to Community's operation of a number of retail bakery stores in Chicago but in 1959 the retail stores were sold and Community has since engaged exclusively in the baking of fruit cakes. The business is seasonal, commencing between May and July and terminating in December.

In 1958, when sufficient orders had accumulated, the fruit cake business was established as a separate operation at Community's Western Avenue plant. A majority of the fruit cake production employees were unskilled, hired "off the street," and at the close of the season all but a few of these employees, who were needed for clean-up and repair, were discharged.

In mid-July, 1958, as in prior years, Community made no effort to contact employees who had previously worked for it on a seasonal basis although, as the president of Community testified, it was "more receptive to hiring a good former employee * * * than a person off of the street without any experience." In fact approximately thirty per cent of the employees hired in 1958 had worked for Community in former years.

In the fall of 1958 two labor unions, Local 2 [2] and Local 15 [3], began to compete for the right to represent the production and maintenance employees of the Western Avenue plant.

On September 20, 1958 Local 15 called a strike, characterized by the Board as an "economic strike." Approximately fifty employees joined the strike. By hiring replacement employees, however, Community was able to operate without interruption. When the strike ended November 11, 1958 all strikers who applied were reinstated.

The Board conducted an election in December, 1958 to determine which of the rival unions should represent the employees. Local 15 charged that Community interfered with the election by assisting Local 2. The charge resulted in the election being set aside pursuant to an agreement between Community and the. Board. The Board ordered a new election held during the 1959 season.

The second election in August, 1959 was won by Local 2. Local 15 then filed objections to the second election based in part on Community's alleged discriminatory rehire formula for the 1959 season.

The attacked rehire formula which Community adopted in April, 1959 was, as to it, novel. The Trial Examiner for the Board made the following finding concerning the formula:

"The Respondent had not established any seniority system prior to the end of the 1958 season. In April, 1959, [certain Community officials] met to decide on a method for hiring employees for the 1959 season. They first considered rehiring past employees on the basis of merit. This was discarded because, as the Respondent kept no permanent records pertaining to performance, there was no point of reference other than memory. Therefore, it was felt that such a system might

1. Section 158 provides in part:
   "(a) It shall be an unfair labor practice for an employer—
   "(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;
   * * * * *
   "(3) by discrimination in regard to hire or tenure of employment * * * to en-

courage or discourage membership in any labor organization: * * *."

2. Local 2, Bakery and Confectionery Workers International Union of America.

3. Local 15, United Bakery and Confectionery Workers Union, Chicago Joint Board, Retail, Wholesale and Department Store Union, AFL-CIO.

give rise to numerous objections from individual employees of the two competing Unions. The next suggested method of hire was to rehire old employees in order of their first date of hire. This also was rejected on the grounds that 'there had been too much intermittent working' and that it 'could lead to * * * greater problems than perhaps some other methods might bring about.' The criteria finally adopted for determining hiring for the 1959 season were as follows: Former employees who had worked for the Respondent prior to 1958 were given preference over those who had worked for the Respondent only during the 1958 season. Those who had worked only during the 1958 season were to be selected for rehire in order of 'their length of 'actual working experience' during the 1958 season. In determining the length of 'actual working experience,' only time actually worked was to be considered, regardless of the reason for absence. Thus, time during which an employee did not work because he was on strike, was ill, was laid off, or was absent for any other cause was to be disregarded."

In accordance with this new rehire formula Community gave no credit to the striking employees for the weeks they were on strike in 1958 when considering their priority to being rehired in 1959. The Board found that "15 strikers lost from one week to six months of employment during the 1959 season solely because the Respondent on the basis of its newly created seniority formula either refused to rehire or delayed in rehiring these employees."

The Trial Examiner sustained the charge that Community had engaged in an unfair labor practice within the meaning of Section 8(a) (1) and (3), supra, on the basis that its 1959 rehire formula was per se discriminatory to the striking employees. In the course of his intermediate report the Examiner stated:

"We turn * * * to a determination of what is perhaps the key issue. * * * Whether the rehire formula adopted by the Respondent in April 1959, and thereafter put into effect, was discriminatory per se because it failed to credit strikers for time during which they engaged in a lawful economic strike, regardless of the Respondent's motive?

\* \* \* \* \* \*

" * * * the employer's failure or refusal to accord seniority to strikers during the period of the strike in a situation such as existed here, regardless of motive, has the effect of penalizing the strikers and acts to the detriment of their tenure of employment.

\* \* \* \* \* \*

" * * * And this is true regardless of the Respondent's motivation in doing so. It is therefore unnecessary to reach the question of the Respondent's intent."

The Board rejected the Examiner's finding that the rehire formula was discriminatory per se. Instead the Examiner's conclusion that the formula was unlawful was upheld for the reason that, "In the circumstances of this proceeding we are persuaded that the natural and foreseeable consequence of Respondent's rehire formula was to discourage employees from union membership in contravention of the Act. Respondent must be held to have intended this result." (Citing Radio Officers' of Commercial Telegraphers Union v. N. L. R. B., 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455) As dissenting Board member Rogers pointed out, the Board did not, however, find that Community was discriminatorily motivated in adopting the rehire formula; but by putting special stress on certain factors dealing with how Community managed its business the Board seemed "to suggest that a discriminatory motive was present."

After the Board's decision the Supreme Court decided Local 357, International Brotherhood of Teamsters etc. v.

N. L. R. B., 365 U.S. 667, 81 S.Ct. 835, 6 L.Ed.2d 11.

In Local 357 the Board contended that all it must show to sustain a charge of a violation of Section 8(a) (1) and (3) in the light of Radio Officers is that a tendency of the questioned conduct to encourage or discourage union membership was foreseeable to an employer or union; since one is presumed to intend the foreseeable consequence of his acts and since acting in order to encourage or discourage union membership is forbidden, the Board's case is made by a simple showing that such encouragement or discouragement is the foreseeable result of the employer's or union's action. The Supreme Court rejected this contention by pointing out that, "It is the 'true purpose' or 'real motive' in hiring or firing that constitutes the test," although, "Some conduct may by its very nature contain the implications of the required intent; the natural foreseeable consequences of certain action may warrant the inference." Supra, 365 U.S. at 675, 81 S.Ct. at 839. Mr. Justice Harlan, in a concurring opinion, with whom Mr. Justice Stewart concurred, made explicit what he believed to be implicit in the opinion written for the Court by Mr. Justice Douglas. Mr. Justice Harlan said:

"What in my view is wrong with the Board's position in these cases is that a mere showing of foreseeable encouragement of union status is not a sufficient basis for a finding of violation of the statute. It has long been recognized that an employer can make reasonable business decisions, unmotivated by an intent to discourage union membership or protected concerted activities, although the foreseeable effect of these decisions may be to discourage what the act protects." Supra, 365 U.S. at 679, 81 S.Ct. at 841.

Even though it appears the Board in the instant case relied upon a "foreseeability" test such as was rejected by Local 357, it now contends that the lack of direct evidence to show Community was motivated by a desire to discourage union membership is of no significance. It argues that Community's conduct by its very nature contained the implications of the required intent; that the natural foreseeable consequence of this action warrants the inference. (Citing Local 357)

We do not agree with the Board's contention. The inconsistency of its position is obvious insofar as it attempts to justify its decision on the ground that the rehire formula is discriminatory "by its very nature" when the Board specifically held that the formula was not discriminatory "per se." The two concepts equate.

Aside from this inconsistency of the Board's position there is evidence that Community's rehire formula was initiated pursuant to a legitimate business purpose. Although Community had previously made no attempt to employ a plan for rehiring its seasonal employees, the situation at the beginning of the 1959 season made the adoption of a plan imperative. In the words of dissenting Board member Rogers:

"* * * during the 1958 season the Respondent had a total complement of 181 employees, and Respondent needed only about half of this number for the 1959 season. The fact that there would be an election in which Local 15 and Local 2 would be competing made obvious the need for the adoption of some kind of employing formula which could not be attacked by either union as discriminatory, and which would still provide the Respondent with the most qualified workers. Certainly, had the Respondent kept work performance records, they probably would have better suited the Respondent's purpose. But the absence of such records by itself does not evidence an unlawful motivation; rather, it only serves to underline Respondent's need to devise another reasonable basis for hire."

Because the record contains evidence of a legitimate business motivation for the rehire formula and since the formula applied equally to both strikers and non-strikers we hold, on the authority of Local 357, that the formula was not discriminatory by its nature; that to find a violation the Board was required to make a finding that Community's intent in adopting the rehire formula was to discriminate against the employees who had struck in 1958; and that since no such finding was made or could have been made when the record as a whole is considered, the Board's petition for enforcement of its order must be and is denied.